### KRIDER PHARMACY & GIFTS, INC., Plaintiff,

v.

### MEDI–CARE DATA SYSTEMS, INC. and ABC Insurance Company, an Unknown Insurance Corporation, Defendant.

### Civ. A. No. 91–C–644.

United States District Court, E.D. Wisconsin.

May 9, 1992.

Jerome E. Smyth, Liebmann, Conway, Olejniczak & Jerry, Green Bay, Wis., for plaintiff.

Dean R. Rohde, Schober & Ulatowski, Green Bay, Wis., for defendant.

## DECISION AND ORDER

REYNOLDS, Senior District Judge.

Presently before this court is plaintiff Krider Pharmacy & Gifts, Inc.'s July 18, 1991 motion to remand this action to state court. For the reasons below, this court grants the motion.

### Background

On May 15, 1991, plaintiff Krider Pharmacy & Gifts ("Krider") commenced this action against defendants Medi–Care Data Systems ("MDS") and ABC Insurance Company in the Circuit Court for Brown County, Wisconsin. Krider is a Wisconsin corporation whose principal place of business is located at Green Bay, Wisconsin, and which is primarily in the business of selling gifts, medicines, and medical equipment (Compl. ¶ 1). MDS is a New Jersey corporation whose principal place of business is located at Hackettstown, New Jersey, and which sells, installs, and maintains computer systems to customers in the health care industry (Compl. ¶ 2).[1] Krider alleges that it purchased computer hardware and software from MDS in December 1989 and that the items have failed to perform adequately. Krider asserts eight causes of action grounded in breach of implied warranty of

fitness for particular purpose, breach of implied warranty of merchantability, breach of contract, negligence, intentional misrepresentation, strict liability, negligent misrepresentation, and breach of express warranty. Pursuant to Section 802.02(1m) of the Wisconsin Statutes, Krider does not specify the amount of money that it seeks as damages. Among other things, Krider demands judgment for consequential damages, including lost profits, lost future profits, loss of good will, loss of business reputation, loss of use of money, loss of money used to engage in office automation (Compl. at 10 (*ad damnum*)).

On June 18, 1991, MDS removed the action to this court pursuant to Title 28 United States Code Section 1441, and moved to transfer the case pursuant to 28 U.S.C. § 1414(a) to the United States District Court for the District of New Jersey.

On July 18, 1991, Krider moved to remand the action to the Circuit Court for Brown County, Wisconsin.

### Facts

In December 1989, Krider purchased from MDS certain hardware and software products ("the system") for $40,660.00 (July 11, 1991 Gary Krider Aff. ¶ 3, Ex. A). MDS delivered and installed the system in Krider's pharmacy in Green Bay and trained Krider personnel to use the system (*Id.* ¶ 5). Once installed, the computer system exhibited at least twenty-five different malfunctions, many of which MDS failed to correct after numerous repair attempts (*Id.* ¶ 6, 7). In September 1990, Krider removed the computer from use (*Id.* ¶ 9). On February 5, 1991, Krider revoked acceptance of the system and requested MDS to return the $40,660 that Krider had already paid on the contract (Compl. ¶ 10). MDS has refused to accept Krider's return of the system and to refund Krider's payments on the contract (*Id.* ¶ 10).

The complete terms and conditions of the sale are contained in the sales agreement executed by the parties (Gary Krider Aff.

---

1. Defendant ABC Insurance Company is an unknown insurance corporation alleged to have sold public liability insurance to MDS and designated by a fictitious name pursuant to Wis. Stat. § 807.12(1) (Compl. ¶¶ 3, 4).

¶ 3, Ex. A; June 17, 1991 Barry Gruber Aff. ¶¶ 4, 5). Despite Krider's request for various types of consequential and incidental damages, the sales agreement contains the following terms and conditions limiting MDS's liability:

(11) SERVICE WARRANTY: In the event that MDS provides hardware or software service hereunder, MDS agrees to provide service of workmanlike quality subject to normal ... problems which may arise.... Such service will generally be consistent with Industry standards. No further warranty or guarantee is offered by MDS to PURCHASER hereunder.

(11a) LIMITED SOFTWARE WARRANTY: ... All software is provided "as is" and MDS hereby disclaims all other warranties, express or implied including the implied warranties of merchantability and fitness for a particular purpose.... Purchaser's sole remedy for a breach of the express warranty stated herein shall be repair or replacement by MDS at MDS' option.

(11b) LIMITED HARDWARE WARRANTY: .... MDS disclaims all other warranties, express or implied including the implied warranties of merchantability and fitness for a particular purpose. MDS shall in no event be liable for incidental or consequential damages....

(12) LIMITATION OF LIABILITY: Notwithstanding any other provision contained hereunder, MDS hereby disclaims liability and shall not be responsible for any delay in performance hereunder, for any malfunction and/or defect in said LICENSED SYSTEM, for any damage to any data base, loss of use of any computer system, lost revenue, lost profit or any other incidental, special, or consequential damages. *In no circumstances shall MDS liability hereunder, whether an action is brought in contract or in tort, exceed the license fee paid hereunder.*

....

(21) DAMAGES: MDS shall in no event be liable for incidental or consequential damages.

(Gary Krider Aff. ¶ 3, Ex. A) (emphasis added). The contract also includes the following choice of law provision:

(40) GOVERNING LAWS: The parties hereto agree that this Sales Agreement has been executed and delivered and shall be governed by the laws of the state of New Jersey.

*(Id.).*

### Analysis

As a threshold matter this court must address Krider's motion to remand in order to determine whether federal subject matter jurisdiction exists. *See* Fed.R.Civ.P. 12(h)(3); *see also Ross v. Inter–Ocean Ins. Co.,* 693 F.2d 659, 660 (7th Cir.1982).

An action is removable under 28 U.S.C. § 1441 only if it could originally have been brought in federal court. Where the removing defendant asserts the existence of original jurisdiction pursuant to 28 U.S.C. § 1332(a), he bears the burden of establishing the diversity jurisdiction requirements of an original federal action. *Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 612 n. 28, 99 S.Ct. 1905 n. 28, 60 L.Ed.2d 508 (1979). Here, the parties agree that they are of diverse citizenship, but they dispute whether there exists a reasonable possibility that Krider could recover more than $50,000, exclusive of interest and costs, on its claims. *See Inter–Ocean Ins. Co.,* 693 F.2d at 663; *see also* 28 U.S.C. § 1332(a). Where the plaintiff cannot recover in excess of this jurisdictional minimum amount of damages, the case must be remanded. *Id.*

The removing defendant ordinarily may establish the amount in controversy by pointing to the amount requested in the *ad damnum* of the complaint. 14A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3725 (1985). This method is unavailable in tort actions removed from Wisconsin state courts, however, because Wisconsin law forbids a plaintiff from quantifying the amount of damages sought in a tort claim. Wis.Stat.

§ 802.02(1m).[2] This rule encourages the parties to engage in the sort of role-reversal that has occurred here: plaintiff Krider argues that its potential claim is worth less than the $50,000 jurisdictional limit while MDS argues that its potential exposure exceeds the limit. Nonetheless, the absence of a specific demand for damages in Krider's complaint does not relieve MDS of its burden of establishing the jurisdictional grounds to justify removal. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Cole v. Great Atlantic & Pacific Tea Co.*, 728 F.Supp. 1305, 1308 (E.D.Ky.1990). In addressing the removability of a complaint that is silent as to damages, this court must make an independent appraisal of the amount in controversy. *Inter–Ocean Ins. Co.*, 693 F.2d at 663. Hence, this court's task is to determine the maximum damages that Krider would be entitled to recover if liability were established. The current record is sufficient for this purpose, because the parties have submitted several affidavits and attached exhibits relating to this issue of potential damages. MDS has failed to demonstrate upon this record the existence of a reasonable possibility that Krider could recover cumulatively more than the $50,000 jurisdictional minimum on its claims.

In order to determine the value of this litigation, this court must first determine which state's substantive laws apply in this diversity action. Because Krider chose Wisconsin as its forum, Wisconsin choice-of-law rules apply. *Sonoco Bldgs., Inc. v. Am. Home Assurance Co.*, 877 F.2d 1350, 1353 (7th Cir.1989). Under Wisconsin law, the parties to a contract may expressly agree that the law of a particular jurisdiction will control, just as Krider and MDS have agreed that New Jersey law will govern the terms of the sales agreement here. *See id.* (citing *First Wis. Nat'l Bank v.*

*Nicolaou*, 85 Wis.2d 393, 397 n. 1, 270 N.W.2d 582 (Ct.App.1978), *appeal dismissed*, 87 Wis.2d 360, 274 N.W.2d 704 (1979)). Krider's contract claims must therefore be evaluated according to New Jersey law. Wisconsin law governs the tort aspects of Krider's claims, however, because the choice-of-law provision in the sales agreement governs only the parties' contract rights, *See Urhammer v. Olson*, 39 Wis.2d 447, 449, 159 N.W.2d 688 (1968), and the significant contacts relating to the tort claims occurred primarily in Wisconsin. *See Belland v. Allstate Ins. Co.*, 140 Wis.2d 391, 397–98, 410 N.W.2d 611 (Ct. App.), *cert. denied*, 141 Wis.2d 985, 416 N.W.2d 297 (1987). MDS demonstrated the computer system in Wisconsin, delivered and installed it in Wisconsin, and trained Krider's personnel in Wisconsin. The conclusions on the choice-of-law questions are not worth belaboring, however, because Krider's contract and tort claims would be evaluated virtually identically under the laws of New Jersey or Wisconsin.

Krider asserts causes of action for breach of implied warranty of fitness for a particular purpose (Compl., Count I) and merchantability (*id.*, Count II), breach of contract (*id.*, Count III), and breach of express warranty (*id.*, Count VIII). The sales agreement disclaims implied warranties of merchantability and fitness for particular purpose and expressly excludes consequential damages (Gary Krider Aff., Ex. A ("Sales Agreement") ¶¶ 11–12 & 21). New Jersey law would give full effect to the contractual exclusion of consequential damages, because Krider alleges no facts suggesting the exclusion was unconscionable at the time of drafting or operated unconscionably here. *See* N.J.Stat.Ann. § 12A:2–719(3) (West 1991);[3] *see also Kearney & Trecker Corp. v. Master Engraving Co.*, 107 N.J. 584, 594, 527 A.2d

**2.** Wis.Stat. § 802.02(1m)(a) provides:
 Relief in the alternative or of several different types may be demanded. With respect to a tort claim seeking the recovery of money, the demand for judgment may not specify the amount of money the pleader seeks.

**3.** N.J.Stat.Ann. § 12A:2–719(3) provides:

 Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

429 (1987). Given that the exclusions of consequential damages are almost certainly enforceable under New Jersey law, the maximum amount that Krider can recover on its breach of contract claims is the amount of the "license fee" paid under the sales agreement (Sales Agreement ¶ 12). Although the license fee is not defined in the contract, it could not exceed the $40,-660.00 that Krider paid for the computer system. Krider could also not recover damages exceeding the $40,660.00 purchase price under any of its breach of warranty claims, because the measure of damages for such claims is "loss of the bargain," or the difference " 'between the value of the goods accepted and the value they would have had if they had been as warranted....' " *Kearney & Trecker Corp.*, 107 N.J. at 594, 527 A.2d 429 (quoting N.J.Stat.Ann. § 12A:2–714(2)). MDS has introduced no evidence suggesting that the value of the system as warranted would exceed the purchase price. *See D'Huyvetter v. A.O. Smith Harvestore Products*, 164 Wis.2d 306, 322, 475 N.W.2d 587 (Wis.Ct.App.1991) (holding that purchase price equalled value of product as represented by seller).

 Krider also seeks to recover in tort under theories of negligence (Compl., Count IV), intentional misrepresentation (*id.*, Count V), strict liability (*id.*, Count V), and negligent misrepresentation (*id.*, Count VI). Neither Wisconsin nor New Jersey law permits recovery under negligence or strict liability theories of the sort of purely economic damages that Krider alleges. In *Sunnyslope Grading, Inc. v. Miller, Bradford & Risberg, Inc.*, 148 Wis.2d 910, 921, 437 N.W.2d 213 (1989) the Wisconsin Supreme Court held:

> [A] commercial purchaser of a product cannot recover solely economic losses from the manufacturer under negligence or strict liability theories, particularly, as here, where the warranty given by the manufacturer specifically precludes the recovery of such damages.

Notably, in reaching this conclusion, the Wisconsin Supreme Court followed the New Jersey Supreme Court's decision in *Spring Motors Distribs. v. Ford Motor Co.*, 98 N.J. 555, 489 A.2d 660 (1985), which the Wisconsin Supreme Court described as representing the majority rule that "the legislative protections granted by the Uniform Commercial Code are not to be buttressed by tort principles and recovery." *Sunnyslope*, 148 Wis.2d at 916, 437 N.W.2d 213. In *Tony Spychalla Farms, Inc. v. Hopkins Agric. Chem. Co.*, 151 Wis.2d 431, 438, 444 N.W.2d 743 (Ct.App. 1989), the Wisconsin Court of Appeals recognized an exception to the *Sunnyslope* doctrine where the defective product causes damage to "other property." Krider's claim does not fall within this exception, however, because the damages that Krider claims to have suffered, such as lost profits and lost good will, stem from the alleged failure of the computer system to perform as expected and not from injury to another person or property. Thus, neither Wisconsin law nor New Jersey law would permit Krider to recover damages under its negligence and strict liability claims.

 Finally, Krider seeks damages under theories of negligent and intentional misrepresentation. Under these theories, an injured party may recover both "loss of the bargain" damages (to the extent that they are not duplicative of "loss of bargain" damages recovered under a breach of contract claim) as well as consequential damages, *D'Huyvetter*, 164 Wis.2d at 324, 475 N.W.2d 587, creating the possibility that the amount in controversy could exceed $50,000. Krider's complaint does not state viable misrepresentation claims, however. Rule 9(b) of the Federal Rules of Civil Procedure requires a plaintiff to plead fraud claims with particularity. *See DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990) (applying Fed. R.Civ.P. 9(b) standard). Moreover, in order to state claims for negligent or intentional misrepresentation under Wisconsin law, a plaintiff must allege, among other things, what particular misrepresentations of fact the seller actually made and how the misrepresentations caused plaintiff's injury. *See Green Spring Farms v. Kersten*, 136 Wis.2d 304, 319, 401 N.W.2d 816 (1987)

(stating elements of negligent misrepresentation claim); *see also Lundin v. Shimanski*, 124 Wis.2d 175, 184, 368 N.W.2d 676 (1985) (stating elements of intentional misrepresentation claims). Krider's complaint fails to state any viable misrepresentation claims, largely because it does not allege that MDS agents made any false statements of pre-existing facts (rather than mere unfulfilled promises) to Krider. *See D'Huyvetter*, 164 Wis.2d at 341, 475 N.W.2d 587.

Under the current record, this court lacks subject matter jurisdiction over this case and accordingly must remand it without taking further action to the state court in which it was filed. *See* 28 U.S.C. § 1447(c).

IT IS THEREFORE ORDERED that plaintiff Krider Pharmacy & Gifts, Inc.'s July 18, 1991 motion to remand this action to the Circuit Court for Brown County, Wisconsin, is GRANTED pursuant to 28 U.S.C. § 1447(c).

IT IS FURTHER ORDERED that the United States District Court Clerk court is instructed to mail a certified copy of this order of remand to the clerk of court of the Circuit Court for Brown County, Wisconsin.